**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA                                                                      PLAINTIFF

v.                                        NO. 4:05CR00054-01 JLH

KENNETH RAY IRVIN                                                                              DEFENDANT

**OPINION AND ORDER**

On November 29, 2007, Kenneth Ray Irvin filed a timely petition to vacate or set aside his conviction and sentence pursuant to 28 U.S.C. § 2255. After an evidentiary hearing, that petition is now ready for decision. For the reasons that follow, Irvin's petition is denied.

**I.**

On March 4, 2005, Irvin was indicted along with two other persons in a four count indictment. Count 1 charged that all three of the defendants conspired to possess with intent to distribute more than 4,270 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 846. Count 2 charged all three defendants with possession with intent to distribute more than 200 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1). Count 3 charged Irvin with possession of a firearm in connection with a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Count 4 charged Irvin with possession of a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1).

On March 18, 2005, the Drug Enforcement Administration began an administrative forfeiture proceeding pursuant to 18 U.S.C. § 983(a) and 19 U.S.C. § 1607(a) to forfeit a 2000 Dodge Intrepid owned by Irvin and seized from a co-defendant on February 10, 2005. Notices were sent to the relevant parties, including Irvin. On April 20, 2005, William C. McArthur, who was one of the lawyers representing Irvin, wrote the asset forfeiture section of the Office of Operations Management

of the DEA and asked for an extension of time to respond to the notice of forfeiture because he had been unable to discuss the matter with Irvin. That letter was delivered to the DEA on April 21, 2005. On May 4, 2005, the DEA responded to McArthur's letter and granted an extension of 20 days from the date the letter was received as the time within which a claim must be submitted. The letter also stated that, if Irvin wished to request the return of the property through the DEA administratively, he would be required to submit a petition for remission or mitigation of forfeiture and state the facts and circumstances that justify the return of the property. On June 21, 2005, additional notices were sent, but the notice to Irvin was returned because Irvin was no longer at the facility to which the notice had been sent. On August 3, 2005, notices again were sent and again returned. On August 31, 2005, notices were sent again, and a person at the West Carroll Detention Center in Epps, Louisiana, signed accepting delivery of the notice on behalf of Irvin.

Irvin introduced into evidence a set of exhibits that essentially constituted his file on the forfeiture proceeding. McArthur sent him a letter on May 20, 2005, enclosing the correspondence from the DEA regarding the forfeiture and informing him that he should make a claim within 20 days from May 19, 2005. Irvin testified that he wrote a letter on June 5, 2005, making a claim for the 2000 Dodge Intrepid; and after receiving the August 31, 2005, notice, he again wrote and made a claim on September 20, 2005.

On September 28, 2005, Irvin entered into a plea agreement pursuant to which he would enter a guilty plea on Counts 1 and 2, while Counts 3 and 4 would be dismissed on motion of the government. Section 11 of the plea agreement related to asset forfeiture and financial accountability. Section 11.A, as originally drafted, provided, in pertinent part:

> The defendant agrees to forfeit all interests in the following property that facilitated the defendant's offense, including but not limited to the following specific property:

> 2000 Dodge Intrepid registered to Irvin on 2-10-05;
> Green Cadillac registered to Irvin on 2-10-05;
> Ruger .45 caliber semi-automatic pistol, serial number 662-09013;
> U.S. currency removed from the bag recovered from the CI and from Irvin's person upon his arrest; . . . .

Before signing the plea agreement, Irvin told the lawyer representing him in the criminal proceeding, Blake Hendrix, that he wanted to keep one of the automobiles for his wife. Hendrix spoke to the Assistant United States Attorney John Ray White, who said that Irvin should pick the one he wanted to keep. Irvin picked the Dodge Intrepid because it was newer than the Cadillac, in better condition, and had an extended warranty. He or Hendrix marked through the line listing the Dodge Intrepid as property that would be forfeited, and then Hendrix, Irvin, and White initialed that handwritten change to the plea agreement. Irvin then changed his plea from not guilty to guilty on Counts 1 and 2. After the Court accepted his change of plea, White moved to dismiss Counts 3 and 4, and those motions were granted.

On October 25, 2005, the DEA forfeited the 2000 Dodge Intrepid to the United States pursuant to 19 U.S.C. § 1609. According to the affidavit of John Hieronymus, forfeiture counsel for the DEA, no properly executed claim was ever received.

Irvin was sentenced on February 1, 2006. He appealed his sentence, but the Eighth Circuit affirmed in an unpublished opinion filed on March 22, 2007. The mandate from the Eighth Circuit was returned on April 18, 2007.

On November 29, 2007, Irvin filed a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255. His first and principal argument is that he had an agreement whereby the government was obligated to return the Dodge Intrepid to his wife, and that the government breached this agreement. He does not ask that his guilty plea be set aside on this basis, but he does ask that he be

re-sentenced or, in the alternative, that he be awarded money damages.[1] In addition, Irvin contends that he received ineffective assistance of counsel.

## II.

The Eighth Circuit has said, "Generally speaking, our circuit views plea agreements as contracts, requiring the parties to fulfill their obligations under that contract." *United States v. Fowler*, 445 F.3d 1035, 1037 (8th Cir. 2006) (citing *United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003) (*en banc*)); *United States v. Van Thournout*, 100 F.3d 590, 594 (8th Cir. 1996)). "A plea agreement involves matters of constitutional significance, however, and the failure of the government to abide by the promises made therein violates a defendant's due process rights." *Id.* The Supreme Court has said that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 499, 30 L. Ed. 2d 427 (1971). "It follows that when the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand[.]" *Mabry v. Johnson*, 467 U.S. 504, 509, 104 S. Ct. 2543, 2547, 81 L. Ed. 2d 437 (1984).

The circuit courts of appeal have generally held that parol evidence is inadmissible to prove the meaning of an unambiguous plea agreement. *United States v. Elashye*, ___ F.3d ___, No. 06-10176, 2008 WL 5392122, at *13 (5th Cir. Dec. 29, 2008); *United States v. Al-Arian*, 514 F.3d 1184, 1191 (11th Cir. 2008); *Buckley v. Terhune*, 441 F.3d 688, 696 (9th Cir. 2006); *United States v. Reyes Pena*, 216 F.3d 1204, 1212 (10th Cir. 2000). "Likewise, the use of parol evidence to supplement

---

[1] Irvin also argues that the government breached the plea agreement in another respect. That argument will be addressed separately in an addendum to this opinion filed under seal.

the terms of an unambiguous written plea agreement is ordinarily frowned upon, especially where that agreement disclaims the existence of additional promises." *Bemis v. United States*, 30 F.3d 220, 222 (1st Cir. 1994). *But see United States v. Garcia*, 956 F.2d 41, 44 (4th Cir. 1992) (holding that the parol evidence rule should not be rigidly applied in plea agreements because the defendant's constitutional rights are implicated). The Eighth Circuit has not explicitly stated that the parol evidence rule applies to plea agreements, but it has held, as noted above, that plea agreements should be interpreted according to general contract principles.

"When ascertaining the intent of the parties, the language of the agreement, if unambiguous, should ordinarily be conclusive." *Margalli-Olvera v. I.N.S.*, 43 F.3d 345, 351 (8th Cir. 1994). Section 11 of the plea agreement contains an agreement by Irvin to forfeit certain property and promises by Irvin not to interfere with forfeiture proceedings with respect to the property that he had agreed to forfeit, but that section imposes no obligations on the government. Striking the Dodge Intrepid from the list of property that Irvin agreed to forfeit did not, by itself, create a promise by the government to do or not to do anything. Nowhere in the written plea agreement is there a promise by the government to return the Dodge Intrepid or to cease the administrative forfeiture proceedings.

Irvin testified that he understood that the government was to return the Dodge Intrepid in exchange for the Cadillac, but the plea agreement contains no such provision. Section 18 of the plea agreement states:

> This document completely reflects all promises, agreements and conditions made between the parties, constitutes the entire agreement between the parties and supersedes any and all prior agreements or understandings between the parties, oral or written, with respect to the subject matter hereof.

Where "the Government incorporates into the plea agreement an integration clause expressly disavowing the existence of any understandings other than those set forth in the plea agreement, a

5

defendant may not rely on a purported implicit understanding in order to demonstrate that the Government is in breach." *In re Altro*, 180 F.3d 372, 376 (2nd Cir. 1999).

Section 16 of the plea agreement provides:

This Agreement is binding only upon the United States Attorney's Office for the Eastern District of Arkansas and the defendant. It does not bind any United States Attorney outside the Eastern District of Arkansas, nor does it bind any other federal, state or local prosecuting, administrative, or regulatory authority.

Thus, the plea agreement is an agreement between the United States Attorney for the Eastern District of Arkansas and the defendant, and does not bind the DEA.

During the evidentiary hearing in this case, in response to questions from the Court, Hendrix testified as follows:

THE COURT: My question to you is, to your knowledge, was there any promise made by the United States Attorney for the Eastern District of Arkansas, meaning his assistants, also, which is Mr. White or anybody else who was authorized to act on behalf of the United States Attorney for the Eastern District, is there any promise made by any attorney for the United States Attorney's Office in the Eastern District of Arkansas that they did not keep? Did they promise to do anything, promise Mr. Irvin anything, without keeping the promise?

THE WITNESS: I see what you're saying, Judge, and so the precise answer is no, that Mr. White did not promise me or Mr. Irvin, "I'm going to get you that car back" and then fail to do it. It was, as I understand it, it was administratively forfeited. He doesn't have the power to forfeit it --

THE COURT: I don't deal with these. I don't know if you do or not, if you have cases where you have administrative forfeitures for your clients. You are nodding your head, and you're telling me yes, you do.

THE WITNESS: Yes, sir.

THE COURT: What would be the process then that should happen? Here we have a plea agreement where as initially drafted Mr. Irvin has agreed to forfeit a Dodge Intrepid. That's stricken through, so he's no longer agreeing he's going to forfeit that. This agreement is only binding, in terms of the government, on the U.S. Attorney's Office for the Eastern District of Arkansas. It is not binding on the regulatory agency.

6

    THE WITNESS:    Right.

As the transcript shows, Hendrix testified that the United States Attorney's Office made no promise to Irvin that it failed to keep. He also acknowledged that the plea agreement bound only the United States Attorney for the Eastern District of Arkansas and Irvin, not the DEA.

    As noted, Irvin testified that it was his understanding that the Assistant United States Attorney, John Ray White, had agreed to give him the Dodge Intrepid back, and that Mrs. Irvin would be allowed to pick up the Dodge Intrepid and surrender the Cadillac, which was then in her possession.[2] The Court asked Irvin during his testimony whether he had any direct communications with White, or whether he had overhead the conversations between White and Hendrix, and he testified that he did not. All of his conversations were with his own attorney, Hendrix. Hence, Irvin cannot say that White made any oral promises, and Hendrix expressly denied that White made any oral promises.

    Thus, there is no evidence that the United States Attorney's Office made any promise, oral or written, to Irvin that it failed to keep. Even if the Court were to decide in light of the constitutional implications of a plea agreement not to apply the parol evidence rule, there is no evidence of an oral promise or agreement by the government, so the result nevertheless would be that Irvin could not prevail on his claim for habeas relief based on a breach of an agreement by the government.

    The Court also asked Hendrix what should have happened with respect to the administrative proceeding. He testified that there should have been a claim made in the administrative proceeding asking that the matter be referred for judicial consideration, at which time it could have been brought

---

[2] The evidence established that the Cadillac was never forfeited even though Irvin later made efforts to surrender the Cadillac in return for the Dodge Intrepid.

into court and, as a practical matter, resolved as a part of a criminal process. For some reason, as Hendrix described it, "the administrative thing was apparently screwed up." Irvin introduced a copy of a written claim to the Dodge Intrepid dated September 20, 2005, which he wrote and which he says that he mailed. The government produced the declaration of John Hieronymus, forfeiture counsel of the DEA, saying, "On October 25, 2005, after there had not been any properly executed claim received, and after the time limit for filing said claim expired, the DEA forfeited the 2000 Dodge Intrepid to the United States pursuant to Title 19, U.S.C., 1609[.]"

Whether the DEA acted rightly or wrongly in forfeiting the Dodge Intrepid, however, is not an issue that the Court can resolve in the context of this proceeding. As noted, Irvin brings this action pursuant to 28 U.S.C. § 2255. That statute authorizes Irvin to assert a claim that he should be released on the ground that the sentence was imposed in violation of the constitution or laws of the United States, that the Court was without jurisdiction, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise was subject to collateral attack. If the DEA erred in its declaration of forfeiture, Irvin may have remedies elsewhere, but he has no remedy under 28 U.S.C. § 2255. Because 28 U.S.C. § 2255 affords relief only to a prisoner claiming the right to be released, the Eighth Circuit has held that a federal prisoner cannot challenge the restitution portion of his sentence under that statute. *United States v. Bernard*, 351 F.3d 360, 361 (8th Cir. 2003). If a prisoner cannot challenge the restitution portion of his sentence under 28 U.S.C. § 2255, it follows that he cannot challenge under that statute an administrative forfeiture that was not part of his sentence.

Irvin's claim of ineffective assistance of counsel fails for the same reason. His *pro se* petition asserts that his attorneys had a duty to insure that the government would live up to the bargain that

the government had made with him and, after sentencing, to make sure that the government specifically performed. However, as explained above, there is no evidence that the government made any promise to Irvin that it did not keep. Irvin has pointed to no evidence that anything about his conviction or sentence might have been different had his counsel handled the negotiations over the Dodge Intrepid differently. Irvin argues that his attorneys should have made sure that the Dodge Intrepid was returned to him, but that argument relates to whether they should have taken some action in the administrative forfeiture proceeding. To the extent that Irvin is claiming that his attorneys should have taken action in the administrative forfeiture proceeding, the Court is unable to reach that claim for the same reason that it cannot reach the issue of whether the DEA erred in administratively forfeiting the Dodge Intrepid. *Cf. Smullen v. United States*, 94 F.3d 20, 25-26 (1st Cir. 1996) (a prisoner's ineffective assistance of counsel claim relating only to the imposition of a fine falls outside of § 2255).

## CONCLUSION

For the reasons stated, Irvin's petition to vacate or set aside his conviction and sentence pursuant to 28 U.S.C. § 2255 is DENIED. His petition is dismissed with prejudice.

IT IS SO ORDERED this 13th day of January, 2009.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE